UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR706 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| DEVONN FAIR, et al., | ) | |
| | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

On November 10, 2022, the Court conducted a hearing in this matter that involved the start of the jury selection process. During the hearing, several defendants objected to the presence of Deputy U.S. Marshals in the courtroom, asserting that they believed the security force to be "unnecessary." The Court now supplements its denial of any request to alter the use of the U.S. Marshal Service for courtroom security.

The Supreme Court of the United States took up a similar issue:

> The question presented in this case is whether a criminal defendant was denied his constitutional right to a fair trial when, at his trial with five codefendants, the customary courtroom security force was supplemented by four uniformed state troopers sitting in the first row of the spectator's section.

*Holbrook v. Flynn*, 475 U.S. 560, 562 (1986). The Court noted that "we have never tried, and could never hope, to eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct." *Id.* at 567. In rejecting any claim of inherent prejudice, the Court held:

> The chief feature that distinguishes the use of identifiable security officers from

> courtroom practices we might find inherently prejudicial is the wider range of inferences that a juror might reasonably draw from the officers' presence. While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.
>
> To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions create the impression in the minds of the jury that the defendant is dangerous or untrustworthy. However, reason, principle, and common human experience, counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate.

*Id.* at 569 (citations and quotations omitted).

*Holbrook* ultimately upheld the use of a security force of 12 persons -- four uniformed state troopers, two Deputy Sheriffs, and six Committing Squad officers. *Holbrook* presents with remarkably similar facts in that the case before this Court also involves six defendants proceeding to trial. Moreover, the security forces in this Courthouse have also expressed a preferred ratio of two officers to every defendant, just as the security forces in *Holbrook* did. *Id.* at 564. However, unlike in *Holbrook*, the Court does not intend to utilize any officers in full law enforcement uniforms. Instead, the Marshals will make every effort to dress in a manner as to not draw any additional attention from jurors. Moreover, as five of the six defendants moving forward to trial in this matter were previously detained, the Government has a "legitimate interest in maintaining custody during the proceedings[.]" *Id.* at 572.[1]

---

1 During this detention, Defendant Fair was found with a "six and a half inch piece of metal sharpened to a point with

For all the reasons stated above, the holding in *Holbrook* and a particularized review of the facts presented in this matter, the use of up two officers per defendant will not prejudice the right of any defendant to a fair trial.

IT IS SO ORDERED.


November 14, 2022                             */s/ John R. Adams*
                                              JUDGE JOHN R. ADAMS
                                              UNITED STATES DISTRICT JUDGE

---

wrapped cellophane handle." Doc. 20 at 5. Defendant Gresham was alleged to have shoved a door closed on a correctional officer to facilitate the theft of food. Doc. 241 at 3. Defendant Brandon Bryant is alleged to have possessed a substance that guards believed to be K2. Doc. 321 at 3. On another occasion, Defendant Brandon Bryant refused directives during a search of his cell and became "non-compliant" and began "resisting all directives." Doc. 320 at 3. In other words, Defendants have shown they are a security risk despite their detention status.